Mark Anthony **JOHNSON** and Houston General Insurance Company, Appellants,

v.

Michael **KING**, Stripe–A–Zone, Inc. and Highway Signs & Paint, Inc., Appellees.

No. 2–90–256–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 18, 1991.

Rehearing Overruled Jan. 21, 1992.

---

Wells, Williford, Felber & Purcell, and Ken Kraatz, Fort Worth, for appellants.

Strasburger & Price, John D. Phillips, Mark M. Donheiser, and D. Randall Montgomery, Dallas, for appellees.

Before FARRIS, MEYERS, and DAY, JJ.

## OPINION

DAY, Justice.

Mark Johnson appeals a judgment based on a jury verdict in his favor against appellees in a personal injury suit arising out of a traffic accident.

We affirm.

Mark Johnson was seriously injured in a traffic accident when his truck collided with the truck being driven by Michael King. The jury found that Johnson had sustained damages in the amount of $100,000. Johnson has appealed only the damages awarded by the jury.

In his first point of error, Johnson asserts that the trial court erred in failing to include in the court's charge to the jury his requested jury question with regard to a damage element of "loss of intellectual ability." He asserts that without such a charge, the jury was unable to award him damages for the greater portion of his injuries—the injury to his brain. We disagree.

The trial court submitted five broad categories of damages for the jury to consider: (1) physical pain and mental anguish; (2) loss of earning capacity; (3) disfigurement; (4) physical impairment; and (5) medical care. This broad form submission is the preferred method of submission. *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex.1986).

In other cases wherein recovery for a "brain injury" was sought, the charge was the same or similar to that submitted in this case.

In *Cornelison v. Aggregate Haulers, Inc.*, 777 S.W.2d 542 (Tex.App.—Fort Worth 1989, writ denied), a party injured in a traffic accident suffered injuries including "organic brain syndrome," the same malady that Johnson has suffered. The jury was asked to assess damages for physical pain and mental anguish in the past, disfigurement in the past, physical impairment in the past, physical pain and mental anguish in the future, loss of earning capacity in the future, disfigurement in

the future, future physical impairment, and future medical expenses. *See also Santa Rosa Medical Center v. Robinson*, 560 S.W.2d 751, 753 (Tex.Civ.App.—San Antonio 1977, no writ).

█ Furthermore, we believe that submission of a separate element of "loss of intellectual ability" would impermissibly allow for duplicate recovery. If a court's charge fairly and fully presents all controlling issues, it is not error to refuse to submit additional issues or instructions which are mere shades or variations of the issues already submitted. *Lively Exploration Co. v. Valero Transmission Co.*, 751 S.W.2d 649, 656 (Tex.App.—San Antonio 1988, writ denied); *Williams v. Texas City Ref., Inc.*, 617 S.W.2d 823, 825 (Tex.Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). The potential areas of overlap are in the existing damages elements of loss of earning capacity, and physical impairment with the loss of intellectual capacity.

█ Evidence of the "organic brain syndrome" suffered by Johnson includes symptoms such as depression, headaches, loss of memory, and inability to perform complex problem-solving. Depression and other emotional manifestations of injury have been held compensable by damages relating to physical pain and mental anguish. *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 368 (Tex.1987); *Brown v. Poff*, 387 S.W.2d 101, 106–07 (Tex.Civ.App.—El Paso 1965, writ ref'd n.r.e.). Headaches are clearly part of physical pain. Loss of memory and problem-solving deficits are also part of physical impairment. *Sutton Motor Co. v. Crysel*, 289 S.W.2d 631, 634 (Tex.Civ.App.—Beaumont 1956, no writ). Point of error one is overruled.

█ In his second point of error, Johnson asserts that the trial court erred in denying his motion for new trial with respect to damages, as the jury's verdict in this regard was so against the great weight and preponderance of the evidence as to be manifestly unjust. The jury awarded $70,000 for past damages and $30,000 for future damages. There was evidence of approximately $64,000 in past medical bills.

█ In reviewing a point of error asserting that a finding is against the great weight and preponderance of the evidence, we must consider and weigh all of the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam); *Ford Motor Co. v. Nowak*, 638 S.W.2d 582, 585 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). So considering the evidence, if a jury finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained, regardless of whether there is some evidence to support it. *Watson v. Prewitt*, 159 Tex. 305, 320 S.W.2d 815, 816 (1959) (per curiam); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951) (per curiam).

We will review the testimony which referred to Johnson's brain injury only. Dr. Scott first saw Johnson in August of 1989, twenty-seven months after the accident. At that time, Johnson's main complaint was "thinking problems." Generally, plaintiff appeared to be on the low average side of the intelligence scale, and he looked a little depressed. Dr. Scott opined that Johnson had suffered a traumatic brain injury that resulted in a change of his thinking abilities which is contributing to his depression. A repeat neuropsychological evaluation, conducted upon Dr. Scott's recommendation, showed some improvement, but not enough to change Johnson's capabilities. Results of an MMPI (Minnesota Multi–Phasic Personality Inventory) showed that Johnson was trying to be honest, but was perhaps exaggerating his psychopathology. When Dr. Scott saw Johnson again on February 2, 1990, Johnson was doing much better. Dr. Scott then ordered an MRI (magnetic resonance imaging) test, which was essentially normal. Dr. Scott said that objective evidence of X-rays taken immediately after the accident (which showed fractures of the face) showed an inference of significant brain injury. Dr. Scott's ulti-

mate diagnosis was that Johnson had sustained an injury to the brain in the accident.

On cross-examination, it came out that an earlier doctor (Dr. Odgers) suspected that Johnson had learning difficulties before the accident. Dr. Scott admitted that Johnson has been progressively getting better.

Dr. Odgers, a clinical psychologist, with a sub-specialty in neuropsychology first saw Johnson on May 26, 1987 (shortly after the accident) to evaluate Johnson's brain functions. At that time, Johnson's language functions were somewhat impaired, while his memory functions were severely impaired. Overall, at that time Johnson appeared to be recovering from a brain injury. A complete neuropsychological work-up was done on Johnson on August 20, 1987. There continued to be minor deficits in attention and concentration, but Johnson was getting better. Earlier language problems were gone. However, Johnson's memory functions were still markedly impaired. A similar assessment was done on February 22, 1988.. Johnson's memory functioning was better, and there was an overall improvement at that time. However, Johnson will probably always have difficulty in abstract thinking and complex problem-solving. Dr. Odgers saw Johnson again on August 25, 1989. In October 1989, Dr. Odgers ran a series of mental-process tests on plaintiff. On some of the tests, Johnson was within normal limits. On others, the results were in the impaired range. Once again, Dr. Odgers thought Johnson had improved. It was very difficult for the doctor to tell if Johnson was any worse now than before the accident. Additionally, the doctor thinks that Johnson's memory functioning may be approaching the pre-accident level. Johnson's grades in high school were in the C — to D range. Johnson's abilities now fall within the borderline range, but according to this doctor, Johnson has probably always been a slow learner. Interestingly, the records from rehabilitation training at Easter Seals showed that Johnson's memory functioning improved 40% after repeat training sessions.

Dr. Fiederlein, a neurologist with a sub-specialty in headache treatment first saw Johnson March 30, 1989, twenty-two months after the accident. His primary diagnosis was of a post-traumatic vascular headache syndrome (migraine headaches), post-traumatic depression, and mild organic brain syndrome. There is a family history of vascular headaches from plaintiff's mother's family. Trauma can sometimes bring out vascular headaches that previously were not present in an individual. Johnson consistently reported that his headaches were improving under treatment. Dr. Fiederlein believes that Johnson sustained a significant head injury, and that Johnson is still currently impaired to a significant degree. This doctor testified that based on the available records, there were probably no similar problems with Johnson before the accident. Records from one month before trial in this case show improvement, with Johnson reporting headaches that were mild to absent. Dr. Fiederlein testified that Johnson's headaches themselves are no longer a reason for current impairment, as they are being controlled with medication, and the doctor hopes that with continued control, the medicine can be withdrawn completely.

■ A jury is free to disregard a doctor's testimony on both the necessity of treatment and on the causal relationship between the accident and the plaintiff's complaints. *McGuffin v. Terrell*, 732 S.W.2d 425, 428 (Tex.App.—Fort Worth 1987, no writ). Expert testimony as to whether an accident caused a particular injury is not binding upon a jury. *Hulsey v. Drake*, 457 S.W.2d 453, 460 (Tex.Civ. App.—Austin 1970, writ ref'd n.r.e.); *Reinke v. Thomas*, 369 S.W.2d 692, 694 (Tex.Civ.App.—Waco 1963, writ ref'd n.r.e.).

Appellant points to the almost $64,000 in medical expenses accrued over the course of three years as evidence of the severity of his injury. However, a jury is instructed to only award damages which were proven (by a preponderance of the evidence) to be reasonable and necessarily in-

curred because of the accident. *Monsanto Co. v. Johnson*, 675 S.W.2d 305, 312 (Tex. App.—Houston [1st Dist.] 1984), *writ ref'd n.r.e. per curiam*, 696 S.W.2d 558 (Tex. 1985) (The party seeking medical expenses bears the burden of showing that the expenses were reasonable and necessary.); *Gerland's Food Fair, Inc. v. Hare*, 611 S.W.2d 113, 115 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) Indeed, a significant portion of the medical expenses were not incurred until over two years after the accident.

Because of the broad form submission of the damage issue, it is impossible to determine exactly how much the jury awarded for which element of damages. It is clear, however, that not all of the $64,000 in medical expenses was proven to be necessary, nor was the cost of some of the treatment proven reasonable. We cannot say that this award of damages is "so contrary to the great weight and preponderance of the evidence as to be manifestly unjust." *Watson*, 320 S.W.2d at 816; *In re King's Estate*, 244 S.W.2d at 661. Point of error two is overruled.

The judgment of the trial court is affirmed.