WHITE V. STATE



NO. 07-00-0473-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JULY 24, 2002



______________________________




KAREEM ABDUL JABBAR WHITE, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 64TH DISTRICT COURT OF SWISHER COUNTY;



NO. B3335-99-07CR; HONORABLE JACK R. MILLER, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

 Following a plea of not guilty, appellant Kareem Abdul Jabbar White was convicted
by a jury of delivery of cocaine, enhanced, and punishment was assessed by the trial court
at 60 years confinement and a $5000 fine. Presenting eight issues, appellant challenges
his conviction. By issues one and two, he contends the evidence is legally and factually
insufficient to sustain his conviction because Agent Tom Coleman, the primary witness,
testified contrary to the allegations in the indictment. By issues three and four, appellant
asserts the evidence is legally and factually insufficient to sustain his conviction because
by his testimony Agent Tom Coleman placed himself in Amarillo or between Amarillo and
Tulia at the time the offense occurred. By issues five through eight, appellant challenges
the legal and factual sufficiency of the evidence to establish the elements of a playground
as set forth in section 481.134(a)(5) of the Texas Health and Safety Code and whether the
crime occurred within 1,000 feet of a playground. Based upon the rationale expressed
herein, we affirm.

 During an 18-month period from January 1998 to August 1999, Tom Coleman was
hired by the Swisher County Sheriff's Office and assigned to the Panhandle Regional
Narcotics Task Force to work deep undercover and infiltrate the drug community. 
Coleman blended into the Tulia community and performed manual labor. He became
friends with Elijah Kelly, who introduced Coleman to appellant. On Mondays, Coleman
worked at the Tulia Livestock Auction (sale barn). On Monday, September 28, 1998, Kelly
and Coleman began their day at the sale barn at approximately 6:30 a.m. Coleman asked
Kelly where he could buy crank or methamphetamine. The two eventually ended up at a
residence where appellant sold Coleman a bag of cocaine. 

 By his first four issues, appellant challenges the legal and factual sufficiency of the
evidence to sustain his conviction. We disagree. When both the legal and factual
sufficiency of the evidence are challenged, we must first determine whether the evidence
is legally sufficient to support the verdict. Clewis v. State, 922 S.W.2d 126, 133
(Tex.Cr.App. 1996). It is a fundamental rule of criminal law that one cannot be convicted
of a crime unless it is shown beyond a reasonable doubt that the defendant committed
each element of the alleged offense. U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann.
art. 38.03 (Vernon Supp. 2002); Tex. Pen. Code Ann. § 2.01 (Vernon 1994). In conducting
a legal sufficiency review, we must determine whether, after viewing the evidence in the
light most favorable to the prosecution, any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307, 318, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d
154, 157 (Tex.Cr.App. 1991), overruled on other grounds, Paulson v. State, 28 S.W.3d
570, 573 (Tex.Cr.App. 2000). As an appellate court, we may not sit as a thirteenth juror,
but must uphold the jury's verdict unless it is irrational or unsupported by more than a mere
modicum of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Cr.App. 1988).

 After conducting a legal sufficiency review under Jackson, we may proceed with a
factual sufficiency review. Clewis, 922 S.W.2d at 133. The Court of Criminal Appeals has
directed us to ask whether a neutral review of all the evidence, both for and against the
finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the fact finder's determination, or the proof of guilt, although adequate if
taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11
(Tex.Cr.App. 2000) (adopting complete civil factual sufficiency formulation); see also King
v. State, 29 S.W.3d 556, 563 (Tex.Cr.App. 2000). Accordingly, we will reverse the fact
finder's determination only if a manifest injustice has occurred. Johnson, 23 S.W.3d at 12. 
In conducting this analysis, we may disagree with the jury's determination, even if
probative evidence supports the verdict, but must avoid substituting our judgment for that
of the fact finder. See Santellan v. State, 939 S.W.2d 155, 164 (Tex.Cr.App. 1997).

 Before determining whether the evidence is legally sufficient to sustain the
conviction, we must review the essential elements the State was required to prove. 
Appellant was indicted for intentionally and knowingly delivering by actual transfer to Tom
Coleman, cocaine in an amount of one gram or more but less than four grams. See Tex.
Health & Safety Code Ann. § 481.112(a) & (c) (Vernon Supp. 2002). Actual transfer
consists of transferring the real possession and control of a controlled substance from one
person to another person. Nevarez v. State, 767 S.W.2d 766, 768 (Tex.Cr.App. 1989) (en
banc). 

 The evidence established that Kelly introduced Coleman to appellant and that the
two met on a number of occasions prior to September 28, 1998. Coleman testified that on
the date of the offense, he and Kelly began their Monday at the sale barn at 6:30 a.m. and
Coleman asked where he could buy crank or methamphetamine. According to Coleman,
Kelly suggested a few names and places and they ended up parked near a residential
driveway. Coleman remained in the truck and Kelly walked to the front porch to speak with
a man named "Cash." Just then, appellant pulled up in a car and approached Coleman
and asked what he needed. Appellant explained that he did not have crank, but did have
"powder" and walked inside the house and returned with some "dope" which Coleman
bought for $220. A chemist with the Texas Department of Public Safety testified that he
examined the substance and determined it to be cocaine weighing 2.98 grams. We
conclude the evidence is legally sufficient to establish delivery by actual transfer from
appellant to Coleman of cocaine of one or more but less than four grams. 

 Concluding that the evidence is legally sufficient to support the verdict, we must
now determine, after a neutral review of all the evidence, whether it is factually sufficient
to support the verdict. Johnson, 23 S.W.3d at 11. It is the exclusive province of the fact
finder to determine the credibility of the witnesses and the weight to be given their
testimony. Johnson v. State, 571 S.W.2d 170, 173 (Tex.Cr.App. 1978); Armstrong v.
State, 958 S.W.2d 278, 284 (Tex.App.--Amarillo 1997, pet. ref'd).

 The defense's trial strategy was to discredit Coleman by establishing that he was
untruthful and that by his testimony, he could not have made a buy from appellant at the
time referenced in his report. According to his report, Coleman purchased cocaine from
appellant on September 28, 1998, at 10:35 a.m. Coleman testified that after he would
make a drug buy in Tulia, it was his routine to return to Amarillo as soon as possible and
weigh and test the substance, complete an evidence tag, place the evidence in a
temporary narcotics vault, and generate a written report. Mike Amos, Commander of the
Panhandle Regional Narcotics Task Force also testified that policy after a drug buy was
to generate a report, conduct a field test, and book the narcotics into evidence on the date
of the buy, if possible. Coleman confirmed that after a secretary typed his report of
appellant's drug sale, he reviewed it and then signed it.

 After a hearing outside the jury's presence, the trial court permitted the defense to
question Coleman regarding a separate drug transaction that also took place on the
morning of September 28, 1998. According to Coleman's report of the other drug
transaction, he made a purchase in Tulia from Willie B. Hall at 9:31 a.m. and paid over
task force money at 9:40 a.m. Utilizing Coleman's protocol as testified to by him, the
defense attempted to establish that given the 45-minute drive from Tulia to Amarillo, it
would have been physically impossible for Coleman to make a purchase from appellant
at 10:35 a.m. in Tulia if Coleman was in Amarillo following up on the buy from Hall. 

 The State argues that although Coleman explained his usual procedure after a drug
purchase was to return to Amarillo, there is no evidence to show that Coleman returned
to Amarillo after his purchase with Willie B. Hall. Relying on Franklin v. State, 928 S.W.2d
707, 708 (Tex.App.-Houston [14th Dist.] 1996, no pet.), the State further asserts that any
conflict in Coleman's testimony goes to his credibility which is to be determined by the fact
finder and not to be intruded upon by an appellate court. 

 Elijah Kelly entered into a plea bargain to testify against appellant. He testified that
on September 28, 1998, he observed appellant hand "something" over to Coleman, but
that he did not see appellant deliver "dope" to him. The State attempted to discredit Kelly
by his prior testimony from another trial that resulted from Coleman's undercover
operation. Conducting a neutral review of all the record evidence under Johnson, 23
S.W.3d at 11, and without substituting our own judgment, we conclude that the evidence
is factually sufficient to support the verdict. Issues one through four are overruled.

 By issues five through eight, appellant challenges the sufficiency of the evidence
to support the enhancement of punishment where the State failed to prove the elements
of a playground and that the crime occurred within 1,000 feet of a playground. (1) We
disagree. The enhancement paragraph of the indictment recites

 [a]nd it is further presented in and to said Court that the defendant
committed the above offense within 1,000 feet of a playground, to-wit: the
Conner Park in Tulia, Texas . . . .


 Appellant specifically asserts that the State failed to produce evidence to show that
Conner Park is a playground. A playground is defined as "any outdoor facility . . . that is
(A) intended for recreation; (B) is open to the public; and (C) contains three or more
separate apparatus intended for the recreation of children, such as slides, swings, and
teeterboards." Tex. Health & Safety Code Ann. § 481.134(a)(3) (Vernon Supp. 2002). 
Further, in a prosecution under section 481.134, a map showing the location and
boundaries of drug-free zones is admissible in evidence and is prima facie proof of the
location or boundaries of those areas if the governing body adopts a resolution or
ordinance approving the map. See § 481.135. When Officer Jim Mull testified, the State
introduced Exhibit 4, a resolution for Tulia approving a drug-free zone map. The resolution
contains a map showing the location of Conner Park. During his testimony, Mull circled
the location of Conner Park on the map and marked the location of the drug transaction
with an "X." According to his testimony, he measured the distance between the driveway
where the transaction occurred and the park to be approximately 192 feet. 

 Mull testified that he observed at least three apparatus for the recreation of children
at Conner Park. We have searched but found no case law interpreting "apparatus" as
used in section 481.134(a)(3)(C). In addition to slides and swings, Mull also observed that
the park provided a basketball court, sandbox, and a pavilion. Appellant suggests that we
limit the term "apparatus" to include only those items specifically mentioned in the statute,
i.e., slides, swing sets, and teeterboards. We agree with the State that the Legislature did
not intend to limit playground apparatus to only slides, swing sets, and teeterboards, and
that the phrase "such as" could be interpreted as meaning "including but not limited to" the
apparatus mentioned in section 481.134(a)(3)(C). We conclude the evidence is sufficient
to establish the enhancement paragraph of the indictment that appellant delivered a
controlled substance within 1,000 feet of a playground. Issues five through eight are
overruled.

 Don H. Reavis

 Justice

Do not publish.
1. We measure the sufficiency of the evidence by the elements of the crime as
defined by the hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240
(Tex.Cr.App. 1997).



ide a jury finding and make a different finding
merely because the court feels a different result is more reasonable. See Pool v. Ford
Motor Co., 715 S.W.2d 629, 634 (Tex. 1986). It is only when the evidence conclusively
establishes a different finding from that of the jury that a court may disregard the jury
finding and substitute the court's finding for that of the jury. See Campbell, 894 S.W.2d
at 419; Scharer v. John's Cars, Inc., 776 S.W.2d 228, 231 (Tex.App.--El Paso 1989, writ
denied). 

 If the trial court disregards a jury finding and enters judgment nov and such action
is challenged on appeal, the appellate standard of review is whether the jury finding was
supported by legally sufficient evidence. See Mancorp, Inc. v. Culpepper, 802 S.W.2d 226,
227 (Tex. 1990). A jury finding is not based on legally sufficient evidence if: (a) there is
a complete absence of evidence to support the finding, (b) the court is barred by rules of
law or of evidence from giving weight to the only evidence offered to prove the matter
found, (c) the evidence offered to prove the matter found is no more than a mere scintilla,
or (d) the evidence conclusively establishes a different finding. See Merrell Dow Pharm.,
Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). When a party bears the burden of proof
and the jury fails to find for that party, a legal sufficiency of the evidence challenge to the
jury's failure to find for the party entails two inquiries. See Sterner v. Marathon Oil Co., 767
S.W.2d 686, 690 (Tex. 1989). First, the record must be examined for evidence that
supports the jury's failure to find for the party with the burden of proof. Second, if there is
no evidence to support the failure to make a finding, then the entire record must be
examined to see if a different proposition is established as a matter of law. Id. 

 In reviewing legal sufficiency issues, only evidence and inferences tending to
support the jury's findings are considered, and evidence to the contrary is disregarded. 
See Mancorp, Inc., 802 S.W.2d at 227-28. The review is of the evidence and inferences
to be drawn from the evidence as they tend to support the jury's findings, and not as they
tend to support the judgment nov entered by the trial court. Id. 

 The factfinder, whether jury or trial court in a bench trial, is the sole judge of the
credibility of the witnesses and the weight to be given their testimony. See Leyva v.
Pacheco, 163 Tex. 638, 641, 358 S.W.2d 547, 549 (1962). The factfinder may believe one
witness and disbelieve another. See McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex.
1986). The factfinder resolves inconsistencies in testimony. Id. 

 The mental processes by which a jury determines the amount of damages is
ordinarily not cognizable by an appellate court. See Thomas v. Oldham, 895 S.W.2d 352,
359-60 (Tex. 1995); Zimmerman, 442 S.W.2d at 678; Prati v. New Prime, Inc., 949 S.W.2d
552, 555 (Tex.App.--Amarillo 1997, writ denied). Where the law does not provide a precise
legal measure of damages, the amount to be awarded is generally within the discretion of
the jury. See id. In assessing personal injury damages, the trier of fact has great
discretion in fixing the amount of the damage award. See McGalliard, 722 S.W.2d at 697. 
Opinions and judgments of expert witnesses are not conclusive on the trier of fact. Id. A
jury generally may disregard a doctor's testimony on both the necessity of treatment and
on the causal relationship between the accident and the plaintiff's complaints. See
Johnson v. King, 821 S.W.2d 425, 428 (Tex.App.--Fort Worth 1991, writ denied). Expert
testimony as to whether an accident caused a particular injury is not binding upon a jury.
Id.; Hulsey v. Drake, 457 S.W.2d 453, 460 (Tex.Civ.App.--Austin 1970, writ ref'd n.r.e.). 
And, such evidence regarding expenses incurred has evidentiary significance but is not
binding on the jury. See Prati, 949 S.W.2d at 556.

B. Analysis

 We first consider Sandoval's argument that Ponce did not preserve error. The first
judgment entered by the trial court reflected the jury verdict. It was only upon Sandoval's
motion that the trial court entered judgment disregarding the jury findings. Ponce opposed
the motion to disregard the jury findings, both by written motion and oral argument. In both
instances Ponce asserted that the jury's findings as to past medical were supported by
evidence, and that the jury's failure to find a greater amount for past medical expenses was
within the jury's prerogative in evaluating the credibility of Sandoval's claim and evidence
that her hypertension and expenses for its treatment were caused by the occurrence. 
Ponce also asserted that the jury's failure to find future medical expenses was likewise
within the jury's discretion in evaluating the credibility of Sandoval's claim and evidence
that her hypertension and expenses for its treatment were caused by the occurrence. The
record of the hearing on Sandoval's motion to disregard the jury's findings reflects that the
trial judge clearly understood Ponce's contentions and the issues posed. 

 After the trial court entered its judgment notwithstanding the jury's findings as to past
and future medical expenses, Ponce filed a Motion to Reconsider by which she contended
that the judgment nov was improper because the jury findings at issue were supported by
factually and legally sufficient evidence. In her motion Ponce cited appropriate authorities. 
Ponce also moved the trial court to re-enter the original judgment which was based on the
jury findings. Both motions were overruled. 

 Ponce timely advised the trial court of her complaint with specificity, clearly
requested the relief she sought, and the trial court ruled on her request. She preserved
error as to issues one and three. See TRAP 33.1(a); Holland v. Wal-Mart Stores, Inc., 1
S.W.3d 91, 94 (Tex. 1999). Because we find issues one and three determinative of
Ponce's appeal, we need not address Sandoval's contention that Ponce did not preserve
error as to issue two. 

 We next address Ponce's issues one and three complaining that the trial court erred
in granting judgment notwithstanding the jury's verdict and in disregarding the jury findings
on past and future medical expenses. The effect of entry of judgment based on the
granting of Sandoval's First Amended Motion for Judgment Non Obstante Veredicto, for
Additur and/or for New Trial, was that the trial court determined that the jury findings of
expenses for past and future medical resulting from the occurrence were supported by
legally insufficient evidence. Unless the findings were supported by legally insufficient
evidence, the trial court had no authority to disregard the amounts found by the jury. See
TRCP 301; Deen, 158 Tex. at 470-71, 312 S.W.2d at 937; Campbell, 894 S.W.2d at 419;
Scharer, 776 S.W.2d at 231. The trial court was not authorized to enter judgment for an
amount in excess of the amounts found by the jury merely because the jury findings were
so against the weight and preponderance of the evidence as to be manifestly unjust, see
TRCP 320; Deen, 158 Tex. at 470-71, 312 S.W.2d at 937. 

 The language of Sandoval's motion and the trial court's letter and judgment
referencing "no evidence" to support the finding of $1,600 for past medical can only mean
that Sandoval and the trial court could not determine the jury's thought processes and how
the jury arrived at its answer, which was less than the amount Dr. Philips opined was
reasonable and necessary; not that there was an absence of evidence to support an
answer of at least $1,600. Clearly there was evidence to support a finding of at least
$1,600, for the motion contended and the trial court found that evidence proved more than
the $1,600 found by the jury. 

 Neither Ponce nor Sandoval disputed the fact that Sandoval's foot was run over by
the automobile Ponce was driving, that Sandoval went to the emergency room for
treatment, and that the first emergency room visit was necessary. The existence of
Sandoval's hypertension was not in dispute. Whether Sandoval's hypertension was
causally related to the occurrence was disputed. Dr. Philips opined that it was related. Dr.
Philips also testified that heredity was a factor in hypertension, there were many causes
for hypertension but its major cause was unknown, twenty percent of the population had
hypertension, fifty percent of the population over age 65 had hypertension and often
patients did not know they had hypertension until after testing was done. He agreed that
although Sandoval did not report a history of hypertension, there was no way of being sure
whether she was hypertensive before the accident without having had her blood pressure
tested. 

 Evidence in the record would have supported a finding by the jury that Sandoval's
past medical expenses resulting from the occurrence were greater than $1,600. But,
evidence also was legally sufficient to support a finding that Sandoval's past medical
expenses resulting from the occurrence were $1,600, even though the trial court and
Sandoval could not fathom the exact mental processes of the jury in reaching its finding. 
The questions of existence of preexisting conditions, aggravation of any such preexisting
conditions, and whether Sandoval failed to properly care for her injuries, if any, from the
occurrence were properly entrusted to the jury by the court's charge. The jury was charged
to answer the questions posed to it based on the credible evidence and testimony before
it, as the jury determined such evidence fit within the instructions and questions in the jury
charge. 

 The opinion and judgment of Dr. Philips, as an expert witness, was not conclusive
on the issues of the causal relationship of all of Sandoval's medical conditions or expenses
to the occurrence - either those in the past, or those in the future. See McGalliard, 722
S.W.2d at 697. His opinions were only evidentiary as to the relationship of such expenses
to the occurrence and the amounts of such expenses. See Prati, 949 S.W.2d at 555-56.
The jury was free to disregard his opinion on such matters as they considered and weighed
all of the evidence and judged the appearance and credibility of the witnesses, including
Dr. Philips, and the weight to give the different parts of the evidence and testimony. See
Johnson, 821 S.W.2d at 428; Hulsey, 457 S.W.2d at 460. 

 We conclude that the jury's finding of $1,600 for past medical expenses is supported
by legally sufficient evidence. We likewise conclude that (1) the jury's failure to find that
Sandoval would incur future medical expense as a result of the occurrence is supported
by legally sufficient evidence, and (2) the evidence is not conclusive as to whether she
would incur future medical expense as a result of the occurrence, or the amount of any
such expenses. Accordingly, the trial court erred in disregarding the findings of the jury as
to Sandoval's medical expenses in the past and those which she would incur in the future
as a result of the occurrence, and in entering judgment nov for past expenses for medical
care in the amount of $8,167.15 and future expenses for medical care in the amount of
$15,300. We sustain Ponce's first and third issues.

IV. CROSS-POINTS: WERE THE JURY FINDINGS SUPPORTED

BY LEGALLY OR FACTUALLY SUFFICIENT EVIDENCE

A. Legal Sufficiency

 By cross-points one, and three, Sandoval challenges the legal sufficiency of the
evidence to support the jury findings of her medical expense in the past and medical
expense in the future. In reaching our conclusion as to Ponce's first and third issues we
have determined that legally sufficient evidence supports the jury's findings of past and
future medical expenses. Our reasoning and conclusions as to Ponce's first and third
issues are determinative of Sandoval's cross-points one and three, and those cross-points
are overruled. 

 In her cross-point five, Sandoval urges that the jury's finding of zero damages for
loss of wage earning capacity in the future is not supported by any evidence. She thus
challenges the legal sufficiency of the evidence to support the finding. She does not,
however, assert that some specific amount was established as a matter of law. 

 Sandoval's cross-point highlights the difficulty with a legal sufficiency challenge to
a jury finding of zero damages by the party with the burden of proof in a tort case. Even
if, in accordance with the first prong of our analysis for legal sufficiency, we were to
determine that there is no evidence to support the finding, Sandoval does not assert that
a particular sum of money has been conclusively established by the evidence. See
Sterner, 767 S.W.2d at 690. Therefore, her challenge fails the second part of the legal
sufficiency analysis which requires that we examine the entire record to see if a different
proposition is established as a matter of law. Id. The different or "contrary proposition" in
regard to Sandoval's cross-point addressing loss of earning capacity in the future, is an
amount of money for such loss. See Jones v. Wallingsford, 921 S.W.2d 463, 464 n.1
(Tex.App.--Eastland 1996, no writ). A court of appeals exceeds its authority when it implies
a finding of actual damages in tort because a court of appeals cannot make original
findings of fact, it can only "unfind" facts. Bellefonte Underwriters Ins. Co. v. Brown, 704
S.W.2d 742, 745 (Tex. 1986). Thus, where there is no contrary or different position from
the jury finding established as a matter of law so that judgment can be rendered for that
different amount, a legal sufficiency challenge will be overruled. See Jones, 921 S.W.2d
at 464 n.1. Accordingly, Sandoval's fifth cross-point is overruled. 

B. Factual Sufficiency

 By cross-points two, four and six, respectively, Sandoval asserts that should we
sustain any of Ponce's issues, then the case should be remanded for a new trial because
the jury's findings as to her expenses for past medical care, future medical care and future
loss of wage earning capacity are so against the overwhelming weight and preponderance
of the evidence as to be manifestly wrong and unjust. See TRAP 38.2(b). We disagree. 

 If a finding is challenged for factual sufficiency of the evidence, all of the evidence
is reviewed, Lofton v. Texas Brine Corp., 720 S.W.2d 804, 805 (Tex. 1986), both favorable 
and contrary to the findings. In re King's Estate, 150 Tex. 662, 664-65, 244 S.W.2d 660,
661 (1951). We reverse on the basis of factual insufficiency only if the verdict is so against
the great weight and preponderance of the evidence that it is manifestly erroneous or
unjust. Id. In making our determination as to factual sufficiency assertions, we do not
reweigh the evidence and set the verdict aside merely because we feel that a different
result is more reasonable. Pool, 715 S.W.2d at 634. The factfinder, is the sole judge of
the credibility of the witnesses and the weight to be given their testimony. Leyva, 163 Tex.
at 641, 358 S.W.2d at 549. The factfinder resolves inconsistencies in testimony. See
McGalliard, 722 S.W.2d at 697.

 Medical records were introduced to document Sandoval's treatment following the
occurrence. Those records showed that her complaints at the initial emergency room visit
following the occurrence focused on her foot and leg. Subsequently, her complaints and
treatments focused on her blood pressure difficulties and physical symptoms compatible
with hypertension. The records reflected findings of EKG changes and reports of chronic
anxiety. Evidence documented preexisting arthritic changes to both of her knees and
boney growths on her heel. Her medical records noted instances in which she did not
comply with instructions on care of her hypertension condition. Dr. Philips opined that he
believed the records were in error as to such notations of noncompliance, but he had not
discussed Sandoval's case with the medical providers or Sandoval herself. 

 The jurors were charged to observe the witnesses, evaluate their demeanor and the
credibility of their testimony and resolve inconsistencies in the evidence. The evidence
clearly demonstrated physical trauma to Sandoval's lower extremity resulting from the
occurrence. The jury had to determine the extent and duration of the trauma's effects.
While the jury's determinations might be different from those a trial court or appellate court
might have made, our review of all the evidence leads us to conclude that the findings are
not so against the great weight and preponderance of all the evidence as to be manifestly
erroneous or unjust. We overrule Sandoval's cross-points two, four and six. 

CONCLUSION

 Having sustained Ponce's issues challenging entry of judgment notwithstanding the
verdict, and having overruled Sandoval's cross-points seeking to vitiate the jury verdict, we
reverse the judgment of the trial court. We render judgment that Maria Sandoval recover
the sum of $1,275 from Judith Howell Ponce, less any credits or offsets due on such
amount, together with interest and taxable court costs in the trial court. We remand the
case to the trial court for entry of judgment in accordance with this opinion, including
determination and allowance of credits and offsets due to Ponce and for determination of
interest on the judgment. Costs of appeal are assessed against Sandoval. 

 


 Phil Johnson

 Justice



Publish.
1. Further references to rules of civil procedure will be by reference to "TRCP_." 
Additionally, references to rules of appellate procedure will be by reference to "TRAP ___."