NO. 07-99-0304-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

AUGUST 30, 2002

_____

JERLEAN STEWART, APPELLANT

V.

TAT'S TEXACO, APPELLEE

_____

FROM THE 172ND DISTRICT COURT OF JEFFERSON COUNTY;

NO. E-153,839; HONORABLE DONALD J. FLOYD, JUDGE

_____

Before QUINN and REAVIS and JOHNSON, JJ.

Appellant Jerlean Stewart appeals the amount of her damages found by the jury and the take-nothing judgment resulting from the trial court's allowing credit against her damages for pre-trial payments of medical expenses by the liability insurer of appellee, Tat's Texaco. We affirm.

## BACKGROUND

Appellant Jerlean Stewart slipped and fell while she was a customer on the premises occupied by appellee Tat's Texaco. She filed suit alleging that Tat's negligence proximately caused her fall and injuries. The case was tried to a jury. The jury found that (1) negligence of both Stewart and Tat's proximately caused the occurrence; and (2) the negligence proximately causing the occurrence was allocable 50% to Stewart and 50% to Tat's. The question of damages was submitted in broad form.[1] The jury found that $5,000 would fairly compensate Stewart for injuries resulting from the occurrence. In its judgment, the trial court allowed a "dollar for dollar credit in the amount of $16,687.80 for medical expenses paid before suit was filed to [Stewart's] health care providers." Judgment was entered that Stewart take nothing.

By four issues, Stewart urges reversible error. Her first two issues argue that her damages exceeded the jury's finding of $5,000, and she challenges the legal and factual sufficiency of the evidence as to the damages finding. Issue three asserts that there is no evidence of the $16,687.80 for which credit was given in the judgment. Issue four claims that the trial court's allowing the $16,687.80 credit for her medical expenses previously paid on behalf of Tat's is an implied finding by the court that her medical expenses from the fall were in that amount, "thereby creating a conflict in the jury's verdict."

---

[1]The question provided for a single answer encompassing the elements of past and future (1) physical pain and mental anguish, (2) physical impairment, (3) reasonable and necessary medical care, and (4) loss of earning capacity. The jury was instructed that it should not include any amount for any condition not resulting from the occurrence, or for any condition existing before the occurrence.

LAW

An appellate court reviewing "no evidence" complaints may consider only the evidence and inferences that tend to support the finding and must disregard all contrary evidence and inferences. See Continental Coffee Prods. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996). When a party bears the burden of proof and the factfinder fails to find for that party, a legal sufficiency of the evidence challenge to the factfinder's failure to find for the party entails two inquiries. See Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989). First, the record must be examined for evidence that supports the factfinder's failure to find for the party with the burden of proof. Second, if there is no evidence to support the failure to make a finding, then the entire record must be examined to see if the contrary proposition is established as a matter of law. Id.

If a finding is challenged for factual sufficiency of the evidence, all of the evidence is reviewed, see Lofton v. Texas Brine Corp., 720 S.W.2d 804, 805 (Tex. 1986), both favorable to and contrary to the findings. See In re King's Estate, 150 Tex. 662, 664-65, 244 S.W.2d 660, 661 (1951). We reverse on the basis of factual insufficiency only if the verdict is so against the great weight and preponderance of the evidence that it is manifestly erroneous or unjust. Id. If we sustain a factual insufficiency issue, we reverse and remand for a new trial. Id.

In making our determination as to factual sufficiency assertions, we do not reweigh the evidence and set the verdict aside merely because we feel that a different result is

more reasonable.  See Pool v. Ford Motor Co., 715 S.W.2d 629, 634 (Tex. 1986).  The factfinder is the sole judge of the credibility of the witnesses and the weight to be given their testimony.  See Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547, 549 (1962).  The factfinder may believe one witness and disbelieve another.  See McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986).   Where enough evidence is before the factfinder that reasonable minds could differ on the meaning of the evidence, or the inferences and conclusions to be drawn from the evidence, we may not substitute our judgment for that of the factfinder.  See Herbert v. Herbert, 754 S.W.2d 141, 144 (Tex. 1988).

Where the law does not provide a precise legal measure of damages, the trier of fact has great discretion in fixing the amount of the damage award.  See McGalliard, 722 S.W.2d at 697.   Opinions and judgments of expert witnesses are not conclusive on the trier of fact.  Id. A jury generally may disregard a doctor's testimony on both the necessity of treatment and on the causal relationship between the accident and the plaintiff's complaints.  See Johnson v. King, 821 S.W.2d 425, 428 (Tex.App.--Fort Worth 1991, writ denied).  Expert testimony as to whether an accident caused a particular injury is not binding upon a jury.  Id.; Hulsey v. Drake, 457 S.W.2d 453, 460 (Tex.Civ.App.--Austin 1970, writ ref'd n.r.e.).  Expert testimony regarding expenses incurred has evidentiary significance but is not binding on the jury.  See Prati v. New Prime, Inc., 949 S.W.2d 552, 556 (Tex.App.--Amarillo 1997, writ denied).

ANALYSIS

Issues 1 and 2: Amount of Damages

4

Stewart had numerous physical problems which pre-dated her fall at Tat's. She had many physical problems after her fall. The jury was instructed, in connection with question 3 as to her damages, that no amount was to be included for any condition not resulting from the occurrence in question, or which existed before the occurrence. The jury was not bound to accept Stewart's testimony or evidence as to a causal relationship between her fall and the complaints she attributed to the fall. See Johnson, 821 S.W.2d at 428. Nor was the jury bound to accept expert testimony as to a causal relationship between her fall and complaints she alleged resulted from the fall, or as to the necessity of a particular amount of medical treatment resulting from her fall. See Ponce v. Sandoval, 68 S.W.3d 799, 807 (Tex.App.--Amarillo 2001, no pet.); Prati, 949 S.W.2d at 556.

There was some evidence to support the jury's damage award. The evidence was not such, however, as to establish a greater particular amount of damages as a matter of law. See Sterner, 767 S.W.2d at 690. Thus, a challenge to the legal sufficiency of the evidence fails. See Ponce, 68 S.W.3d at 809.

In considering Stewart's factual sufficiency challenge, we are not free to reweigh the evidence and disregard the discretion exercised by the jury. See McGalliard, 722 S.W.2d at 697; Pool, 715 S.W.2d at 634. Although we might have found a different amount of damages had we been serving as the jury, we cannot say, in light of the entire record, that the damages award was so against the great weight and preponderance of the evidence as to be manifestly unjust. See In re King's Estate, 244 S.W.2d at 661. We overrule Stewart's issues one and two.

5

Issue 3: Tat's Entitlement to Settlement Credit

By her third issue, Stewart contends that the trial court erred in awarding Tat's a dollar for dollar credit in the amount of $16,687.80 because there was no evidence to support the credit amount. Tat's responds that (1) Stewart stipulated to the amount and (2) the evidence establishes that Tat's liability insurance carrier paid such amount to Stewart's health care carriers to avoid litigation. See TEX. CIV. PRAC. & REM. CODE ANN. §§ 33.011 *et seq.* (Vernon 1997).[2]

In its Second Amended Answer, Tat's elected a dollar for dollar credit for any and all sums, including but not limited to the amount of $16,687.80, advanced by Tat's for payment of Stewart's medical expenses and fees. Before Stewart began presentation of her case-in-chief, the following exchange took place on the record:

(Jury out)

MR. TAYLOR:   Judge, if we may, can I go ahead and put that on the record real quick?

THE COURT:   Okay.

MR. TAYLOR:   Comes now defendant -- and we've already pled it in our most recently amended answer, but I want to go

---

[2]Stewart does not challenge the applicability of Chapter 33 of the Civil Practice and Remedies Code. Further reference to provisions of the Code will be by referring to "TCPRC §_."

ahead and put it on the record, that the defendant elects a dollar-for-dollar credit in the amount of $16,687.80. And I told Mr. McGown that to the extent that after the trial is concluded and the verdict is concluded, that to the extent the credit applies, that I can and will supply him with documentation to establish and prove that the credit is deserving and has been paid to the various health care providers.

MR. MCGOWN: These are medical expenses that were paid to Mrs. Stewart –

MR. TAYLOR: Providers.

MR. MCGOWN: To Mrs. Stewart's providers as a result of the accident.

MR. TAYLOR: Well, –

MR. MCGOWN: Because of the claim.

MR. TAYLOR: That's right.

Tat's also refers us to numerous parts of the documentary evidence introduced at trial to support its claim that the $16,687.80 it claims as a credit was proved to have been paid by its liability carrier, Trinity Universal Insurance Company, for Stewart's benefit.

Tat's does not reference any part of the record to support its claim that Stewart stipulated that Tat's would be entitled to a credit of $16,687.80 in the event of a judgment in Stewart's favor. The part of the record we have quoted above does not comprise a stipulation that Tat's would be entitled to that amount as a credit.

Furthermore, the proof cited by Tat's to support its claim for credit does not conclusively establish either the amount paid by Trinity Universal or that Trinity Universal was Tat's liability carrier. The documents referenced by Tat's refer variously to Trinity

7

Universal as a group carrier for Tat's, as the insurer for Stewart as the "Primary Insured," and as a secondary insurance company for Stewart as the insured.

Nevertheless, we conclude that Tat's has met its burden of proving its entitlement to a credit. TCPRC Chapter 33 requires only a written election before the case is submitted to the factfinder in order for a defendant to obtain a dollar-for-dollar settlement credit. See TCPRC § 33.014;[3] Mobil Oil Corp. v. Ellender, 968 S.W.2d 917, 927 (Tex. 1998). In Ellender, the Texas Supreme Court determined that the defendant's informing the trial court of the settlement amount and setting out the settlement amount in a written opposition to a motion for judgment, when the amount of the settlement was not contested by the opposing party, was sufficient to meet the burden of proof required to obtain settlement credit. See id. at 927.

---

[3]Section 33.012(b) of the TCPRC provides that:
> If the claimant has settled with one or more persons, the court shall further reduce the amount of damages to be recovered by the claimant with respect to a cause of action by a credit equal to one of the following, as elected in accordance with Section 33.014:
>> (1) the sum of the dollar amounts of all settlements;
>> * * *

Section 33.014 provides in relevant part, "[i]f a claimant has settled with one or more persons, an election must be made as to which dollar credit is to be applied under Section 33.012(b). This election shall be made by any defendant filing a written election before the issues of the action are submitted to the trier of fact and, when made, shall be binding on all defendants.

For the purposes of the comparative responsibility law, a defendant who has paid money to or on behalf of a plaintiff in partial consideration of potential liability is considered to be a "settling person." See C & H Nationwide, Inc. v. Thompson, 903 S.W.2d 315, 320 (Tex. 1994).

At trial Stewart did not contest the amount of the credit claimed by Tat's. She did not contest the amount of the credit in her motion for new trial, although she disputed Tat's proof of the amount. On appeal she does not contest the amount paid to her medical providers, only whether Tat's proved the payments. We conclude that measured by the proof requirements specified by the Texas Supreme Court for settlement credits, the trial court did not err in allowing Tat's the credit it pled and stated into the record. See id.

### Issue 4: Does the Settlement Credit Conflict with the Jury Verdict?

By her fourth issue, Stewart argues that by allowing a dollar for dollar credit in the amount of $16,687.80, the trial court impliedly found that Stewart's medical expenses were $16,687.80, that her damages for physical pain and mental anguish were zero, and that such finding created a conflict in the jury's verdict [sic].

Stewart cites two cases to support her argument: Hicks v. Ricardo, 834 S.W.2d 587 (Tex.App.--Houston [1st Dist.] 1992, no writ), and Davis v. Davison, 905 S.W.2d 789 (Tex.App.--Beaumont 1995, no writ).[4] In Hicks, the appellate court found that it was inconsistent for the jury to find damages for past mental anguish but not for future mental anguish when the same circumstances that produced at least some of the previous anguish were likely to recur, and there was evidence that the plaintiff's injury would continue to adversely affect her in the future. See Hicks, 834 S.W.2d at 591-92. Hicks did not present an issue concerning whether the trial court's granting of a judgment credit for

---

[4]Cited in appellant's brief as Davis v. Davis.

9

payments in consideration of potential liability created a conflict within the jury's answers via an "implied finding" by the trial court. Hicks is not applicable to Stewart's issue.

In Davis, the jury's award of zero damages in a negligence action was held to be contrary to the weight and preponderance of the evidence where the objective evidence demonstrated that the plaintiff received first and second degree burns as a result of the defendant's negligence. See Davis, 905 S.W.2d at 791. Davis did not address the question of whether the trial court's allowing a judgment credit for amounts paid in consideration of potential liability resulted in an implied finding by the court in conflict with the jury findings. We do not consider Davis apposite to Stewart's issue.

Stewart's underlying premise for issue four is her conclusion that the trial court made an implied finding that her cost of reasonable and necessary medical care for injuries resulting from the occurrence was $16,687.80. She has, however, cited no authority for her assertion that merely by allowing credit for advance payment of medical expenses by Tat's insurer, the trial court made such an implied finding. Under such circumstances, the issue is waived by inadequate briefing. See, e.g., TEX. R. APP. P. 38.1(h); Fredonia State Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284 (Tex. 1994); Trenholm v. Ratcliff, 646 S.W.2d 927, 934 (Tex. 1983); Gulf Coast State Bank v. Emenhiser, 562 S.W.2d 449, 452-53 (Tex. 1978).

Moreover, TCPRC Chapter 33 does not provide that settlement amounts either must be, or can be, allocated to particular elements of actual damages such as medical care,

10

lost wages, lost earning capacity or physical pain and mental anguish and then those allocated amounts credited only to damages found for corresponding elements by the factfinder. We will not engraft such a requirement into the statute. Tat's complied with the requirement that in order to receive credit, it show an amount paid in consideration of potential liability to Stewart. <u>See</u> TCPRC § 33.011(5); <u>Ellender</u>, 968 S.W.2d at 927. We overrule Stewart's fourth issue.

The judgment of the trial court is affirmed.

Phil Johnson
Justice

Do not publish.